IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DUMIAK and ) <br> CHRISTOPHER SIMMONS, ) <br>   ) <br> Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> VILLAGE OF DOWNERS GROVE, ) <br>   ) <br> JEFFREY GIERMANN, ROBERT JACOBS, ) <br> JAY JOHNSON, KENNETH LISTER, ) <br> ALESSIA MAROCCO, and JOSHUA NELSON, ) <br> Downers Grove Police Officers, ) <br> in their individual and official capacities, ) <br>   ) <br> BRENDAN KELLY, ) <br> Acting Director of the Illinois State Police, ) <br> in his official capacity, ) <br>   ) <br> and ) <br>   ) <br> ROBERT BERLIN, ) <br> DuPage County State's Attorney, ) <br> in his official capacity, ) <br>   ) <br> Defendants. ) | Case No. 19 CV 5604 <br><br> Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

The Village of Downers Grove passed an ordinance making it illegal to solicit money without a permit. No permit is needed for "political or religious activities." Violating the Village ordinance can mean fines or court supervision. The State of Illinois has a similar statute: "No person shall stand on a highway for the purpose of soliciting contributions from the

occupant of any vehicle except within a municipality when expressly permitted by municipal ordinance." Violating the Illinois statute is a misdemeanor offense.

Plaintiffs Michael Dumiak and Christopher Simmons are homeless. They allege that they were ticketed, prosecuted, and fined for panhandling. They stood on an elevated median strip at a four-way intersection in Downers Grove and asked for money to help meet their basic needs—money for bus fare, motel rooms, a cell phone. They sought money from people sitting in passing cars. They held cardboard signs: "GOD BLESS U"; "Anything Helps"; "Trying to Keep WARM"; "Thank U!".

Plaintiffs sued the Village of Downers Grove and six of its police officers (together, "defendants") under 42 U.S.C. § 1983. (Plaintiffs also sued other defendants not relevant here.) The Village repealed the ordinance after plaintiffs sued, mooting plaintiffs' claims for injunctive and declaratory relief. See New York State Rifle & Pistol Association, Inc. v. City of New York, 140 S. Ct. 1525, 1526 (2020).

Plaintiffs claim that defendants violated their free speech rights under the First Amendment of the United States Constitution. They claim that the statute and former ordinance drew unconstitutional distinctions based on content. They claim that defendants are liable for enforcing those laws and seek damages. Defendants move to dismiss. Their motion is denied.

## DISCUSSION

In ruling on defendants' motion to dismiss, the court takes plaintiffs' allegations as true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Village police officers assert qualified immunity, arguing that they violated no clearly established First Amendment law. The court disagrees. The officers started enforcing the statute and ordinance against plaintiffs in 2018. First Amendment law at that time was clearly established: a speech restriction targeting panhandling discriminates

based on content and survives constitutional muster only when supported by a compelling justification. The statute and former ordinance fall short.

The Village argues that plaintiffs fail to state a claim against the Village under Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978). The Village argues that plaintiffs were injured not by the Village ordinance, but by the Illinois statute. A municipality "cannot be held liable under section 1983 for acts that it did under the command of state or federal law." Bethesda Lutheran Homes & Servs., Inc. v. Leean, 154 F.3d 716, 718 (7th Cir. 1998). But the Village was under no command to enact a content based panhandling ordinance—an ordinance replicating the same constitutional flaws that doom the Illinois statute.

**1      Are the Village of Downers Grove police officers entitled to qualified immunity?**

The Village police officers assert qualified immunity. Qualified immunity is a doctrine that shields government officials against damages suits. Officials are immune from suit unless they violate a constitutional right that was clearly established at the time of the violation. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The right must be framed in "the specific context of the case, not as a broad general proposition," Saucier v. Katz, 533 U.S. 194, 201 (2001), and its "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation and quotation marks omitted). A right can be clearly established without a case directly on point: "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question," giving officials "fair warning" that their acts are unconstitutional. Id. at 741 (citation and quotation marks omitted).

The Village police officers argue that they "are being sued because they did their jobs." They argue that "[t]he enactment of a law forecloses speculation by enforcement officers

concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Michigan v. DeFillippo, 443 U.S. 31, 38 (1979). They argue that the Seventh Circuit—forty years ago—upheld Illinois' solicitation statute against a First Amendment challenge, holding that the statute "is a narrow and reasonable limitation on solicitation in intersections which local villages are required to enforce." U.S. Labor Party v. Oremus, 619 F.2d 683, 688 (7th Cir. 1980).

The Village police officers are not entitled to qualified immunity. Cases since U.S. Labor Party "have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). The Supreme Court in Reed v. Town of Gilbert held that a speech restriction "is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." 576 U.S. 155, 163 (2015). Following Reed, the Seventh Circuit in Norton v. City of Springfield held that "[a]ny law distinguishing one kind of speech from another by reference to its meaning now requires a compelling justification." 806 F.3d 411, 412 (7th Cir. 2015) (granting rehearing and remanding with instructions to enjoin a content based panhandling ban). This "compelling justification" standard is "met in practice only by a need as serious as the battle against terrorists." Norton v. City of Springfield, 768 F.3d 713, 716 (7th Cir. 2014), citing Holder v. Humanitarian Law Project, 561 U.S. 1, 130 (2010).

Content based laws usually violate the First Amendment. The former Village ordinance and Illinois statute are no exception. Both are content based restrictions on speech without any compelling justification. Defendants do not seriously argue that that the laws are content neutral. Nor do they argue that the laws are content based, yet supported by compelling justifications. The laws are flagrantly unconstitutional under Reed and Norton (2015)—and reasonably prudent

police officers would have so concluded. The Village police officers violated clearly established First Amendment law and are not entitled to qualified immunity.

The former Village ordinance and the Illinois statute discriminate based on content. Solicitation is a form of speech protected by the First Amendment. Gresham v. Peterson, 225 F.3d 899, 904 (7th Cir. 2000). Under the ordinance, a person soliciting money from drivers stopped at a red light needed to have a certificate of registration. Downers Grove Municipal Code, § 15.30(a). If that same person instead proselytized religion or gathered signatures for a referendum, no certificate was needed—the ordinance expressly exempted "political or religious activities." Id. at § 15.29. Whether the ordinance applied depended on "the topic discussed." Reed, 576 U.S. at 163. The ordinance discriminated based on content.

Illinois' statute is much the same. The statute makes it a misdemeanor to stand on a highway and solicit money from people in cars. 625 ILCS 5/11–1006(c). It also forbids soliciting "employment or business." Id. at (b). The statute says nothing about, and thus presumably allows, other forms of speech—protests, for example, or performance art. These are distinctions based on meaning. Put another way, plaintiff Simmons panhandled with a sign reading, "GOD BLESS U / ANYTHING HELPS & IS A BLESSING! Thank U!". Did Simmons violate the statute? To answer that question, "enforcement authorities" had to "examine the content of the message that is conveyed." McCullen v. Coakley, 573 U.S. 464, 479 (2014) (quoting another source; quotation marks omitted). Simmons might have been in the clear had his sign included just the first line. Only by examining the sign's contents could the Village police officers have had probable cause to believe that Simmons's purpose was to solicit money.

The Illinois statute also discriminates based on class of speaker. The statute allows municipalities to pass ordinances exempting charitable organizations, so long as those

organizations register with the Illinois Attorney General and meet other regulatory requirements. 625 ILCS 5/11–1006(c)(1), (c)(2), (c)(3). Individual people enjoy no such exemption. First Amendment doctrine "suggests little reason to distinguish between beggars and charities in terms of the First Amendment protection for their speech," Gresham, 225 F.3d at 904, and the First Amendment bars "restrictions distinguishing among different speakers, allowing speech by some but not others." Citizens United v. Federal Election Commission, 558 U.S. 310, 340 (2010). That constitutional defect—speaker-based discrimination—might also have tainted the Village ordinance, although the ordinance was silent on whether individual people (distinguished from charitable organizations) could lawfully have solicited money if they had registration certificates. See Downers Grove Municipal Code, §§ 15.30, 15.33. The ordinance was, in any event, unconstitutional.

The Village police officers argue that they "should not be expected to divine evolving developments and conclude that constitutional principles relating to content-based discrimination would apply to a statute (designed in this case) to prevent pedestrians from endangering themselves and distracting drivers at the busiest intersection in town." But qualified immunity doctrine assumes that "a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 819. Reed, Norton (2015), and all the other First Amendment cases cited in this opinion were on the books before 2018, when the officers started enforcing the statute against plaintiffs. As for running into the busiest intersection in town, plaintiffs allege that they stayed clear of traffic and avoided placing others at risk. That allegation must be taken as true for now. And plaintiffs do not challenge the constitutionality of other ordinance provisions regulating solicitation—for example, the provision barring solicitors from "imped[ing] the flow of pedestrian or vehicular traffic." Downers Grove Municipal Code, § 15.32(h).

2        **Does plaintiff state a <u>Monell</u> claim against the Village of Downers Grove?**

Plaintiffs claim that the Village enacted an unconstitutional ordinance. They claim that Village had an official policy of enforcing this ordinance and that this policy violated their First Amendment rights. See <u>Thomas v. Cook County Sheriff's Department</u>, 604 F.3d 293, 303 (7th Cir. 2010). The Village argues that plaintiffs fail to state a claim under <u>Monell</u>.

Plaintiffs state a <u>Monell</u> claim against the Village. The Village argues that a municipality "cannot be held liable under section 1983 for acts that it did under the command of state or federal law." <u>Bethesda Lutheran Homes & Services, Inc. v. Leean</u>, 154 F.3d 716, 718 (7th Cir. 1998). But the Illinois panhandling statute did not force the Village to enact and enforce a parallel ordinance. The statute allows charitable organizations to solicit money "when expressly permitted by municipal ordinance." 625 ILCS 5/11–1006(c). The Village cites no provision ordering municipalities to adopt such ordinances. Panhandling might have violated both ordinance and statute, but the laws—if unconstitutional—inflicted separate harms. Village officers who enforced an unconstitutional municipal law might be liable even if state officers could have enforced an identical, equally unconstitutional state law.

The Village also argues that plaintiffs never alleged that the Village cited plaintiffs for violating the ordinance. Plaintiffs allege the dates that they received citations under the Illinois statute and describe how some those citations were resolved. Plaintiffs allege little about having received citations under the Village ordinances—certainly nothing as specific as their allegations about the statute.

Still, plaintiffs' allegations raise an inference that they were injured even if they were never cited under the ordinance. The ordinance discriminates against the content of plaintiffs' speech—it bans panhandling yet allows petitioning. That discrimination, even without fines,

violates the First Amendment. "[I]n civil rights cases, nominal damages are appropriate when a plaintiff's rights are violated but there is no monetary injury." Six Star Holdings, LLC v. City of Milwaukee, 821 F.3d 795, 805 (7th Cir. 2016), citing Carey v. Piphus, 435 U.S. 247, 266–67 (1978). And nominal damages are all plaintiffs need for their Monell claim to avoid dismissal. See Amato v. City of Saratoga Springs, 170 F.3d 311, 320 (2d Cir. 1999) (reversing the dismissal of a Monell claim with a damages cap of one dollar, reasoning that "nominal damages afford a litigant vindication of the deprivation of his constitutional rights").

In any event, the Village has forfeited this argument. The Village argued in its motion that the ordinance was irrelevant—all roads lead to the statute. "[W]ith or without the adoption of an exception ordinance, [p]laintiffs were violating a state law, and at the time the [p]laintiffs were cited, the statute set forth a command that people not stand on highways or at busy intersections in order to solicit drivers." The Village did not argue that plaintiffs failed to allege that they had been cited under the ordinance. That argument was raised for the first time in the Village's reply, and "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court." United States v. Feinberg, 89 F.3d 333, 341 (7th Cir. 1996).

## CONCLUSION

For these reasons, the court dismisses as moot any claims for injunctive and declaratory relief brought by plaintiffs Michael Dumiak and Christopher Simmons against defendants Village of Downers Grove and its police officers. The court otherwise denies the motion to dismiss [Doc. 41] filed by: (1) Village of Downers Grove; and (2) Village of Downers Grove police officers Jeffrey Giermann, Robert Jacobs, Jay Johnson, Kenneth Lister, Alessia Marocco, and Joshua Nelson.

Defendants are directed to answer the complaint by August 28, 2020. The parties are directed to file a joint status report using this court's form by September 4, 2020. The court will set a status hearing after the COVID-19 emergency has abated. This order is not affected by any General Orders entered by the court.

**ENTER:** July 29, 2020

Robert W. Gettleman
United States District Judge